UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GROSS & JANES CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.  4:15-cv-1058 |
| v. ) | |
| ) | |
| JEFF NEILL TIMBERLAND ) | JURY TRIAL DEMANDED |
| MANAGEMENT, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Gross & Janes Co., by and through its undersigned counsel, and for its Complaint against Defendant Jeff Neil Timberland Management, Inc., states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Gross & Janes Co. ("G & J") is a Missouri corporation with its principal place of business located at 157 W. Argonne, Kirkwood, Missouri 63122.

2. Defendant Jeff Neill Timberland Management, Inc. ("Neill") is an Arkansas corporation with its principal place of business located at 106 East Columbia Street, Magnolia, Arkansas, 71753.

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that this is a civil action between citizens of different states.  Additionally, as set forth below the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant Neill because as set forth below Defendant Neill entered into a contract with Plaintiff G & J that satisfies the Missouri long-arm statute in that the contract was accepted in the State of Missouri.  In addition, Defendant Neill

has sufficient minimum contacts with the State of Missouri to satisfy due process in that this Court has specific personal jurisdiction over Defendant Neill since the injuries which gave rise to this cause of action have a connection to the State of Missouri.

5. Venue is proper in the Eastern District of Missouri under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff G & J's claims occurred in this District.

## COUNT I – BREACH OF CONTRACT

### (Forestry Appraisal Services)

COMES NOW Plaintiff G & J and for Count I of its Complaint against Defendant Neill, states as follows:

6. Plaintiff G & J incorporates by reference herein the allegations contained in Paragraphs 1 through 5 above.

7. Plaintiff G & J is engaged in the business of procuring and processing railroad ties for various customers in the railroad industry.

8. As part of its business, Plaintiff G & J acquires parcels of land to secure an available source of timber.

9. In November 2011, Plaintiff G & J was investigating the purchase of certain parcels of timber from the Smith Turner Land Company.

10. As part of that process, Defendant Neill was retained by Plaintiff G & J's financial lender to determine and report the operable stocking, tonnage and value of standing timber (stumpage) for a timber deed for harvest on 4,218.77 acres that was potentially going to be purchased by Plaintiff G & J.

11. Defendant Neill knew that the report was going to be relied upon by Plaintiff G & J's lender in determining whether to finance the acquisition of the property. In addition, Defendant Neill knew that Plaintiff G & J was going to rely upon the report in order to determine whether to purchase the trees for harvest. Accordingly, Plaintiff G & J was the intended beneficiary of the services performed by Defendant Neill.

12. Defendant Neill in the performance of the agreed upon services was to exercise a degree of care and skill ordinarily exercised and possessed by a forestry appraiser engaged in the type of work contemplated by the agreement on behalf of Plaintiff G & J.

13. Defendant Neill in performance of the duties assumed under the above-referenced agreement, was to perform those services in accordance with the generally accepted forestry appraisal practices and to use its skill and training to properly carryout those duties.

14. Ultimately, on November 28, 2011, Defendant Neill provided its report to Plaintiff G & J's lender. The high plot count inventory with corresponding low percent error for operable timber tonnage and values provided by Defendant Neill, as contained in its report, were relied upon by Plaintiff G&J's lender in deciding to finance the acquisition of the property and by Plaintiff G & J in deciding to purchase the property.

15. Accordingly, on or about January 12, 2012, G & J purchased the property based upon the inventory confidence, calculations, and reports conducted and prepared by Defendant Neill.

16. Subsequent to the purchase of the property, Plaintiff G & J has discovered that Defendant Neill failed to exercise the degree of care and skill ordinarily exercised and possessed by a forestry appraiser engaged in the type of work contemplated by the agreement on behalf of Plaintiff G & J, in that Defendant Neill failed to provide services within the generally accepted

3

forestry appraisal practices and failed to use the skill and training necessary to carry out its duties as set forth below.

17. First, many components of the inventory and reports prepared and provided by Defendant Neill were incorrect and/or non-existent beyond the statistical limits and industry standards, to the point of gross negligence and/or negligent misrepresentations.

18. Specifically, Defendant Neill identified specific tracts of property in multiple reports before, during, and after the purchase that contain thousands of tons of sawtimber and pulpwood. However, it has now been discovered that many of the same tracts were clear-cut prior to the purchase and prior to the on-going preparation of the Neill Reports or were located in areas that could not be harvested.

19. Similarly, Defendant Neill prepared market Timber Tonnage and Value Reports for the years 2011, 2012, 2013, and 2014 that identified specific tracts with thousands of tons of operational timber. However, due to continued harvest delays, Plaintiff G & J has since independently investigated the Reports prepared by Defendant Neill and has determined that many of the tracts identified were never economically operational.

20. Additionally, Defendant Neill has prepared market Timber Tonnage Reports for same said years that identify specific tracts with thousands of tons exaggerated beyond what is typical and consistent stocking for natural hardwood forests in southwest Arkansas and northwest Louisiana.

21. Furthermore, Defendant Neill prepared market Timber Tonnage Reports for same said years that identify specific tracts with thousands of tons misrepresented by product classes verified in cross-review.

22. At the time of the closing of the sale of the property to Plaintiff G & J, Defendant Neill estimated the value of the standing timber on the parcels to be 5.8 to 6.4 million dollars. However, Plaintiff G & J has since learned that the actual value of the standing timber on the parcels was significantly less than represented by Defendant Neill.

23. Therefore, as a direct result of the aforementioned breach of the agreement by Defendant Neill described above, G & J has been significantly damaged.  Presently, it is believed that the damage to Plaintiff G & J will exceed $2,000,000.00.

WHEREFORE, Plaintiff Gross & Janes Co. prays for a judgment in its favor and against Defendant Jeff Neill Timberland Management, Inc. in an amount that is fair and reasonable and to be proven at trial, but in any event no less than $2,000,000.00, for its costs expended herein, and for such further and other relief as this Court deems just and proper under the circumstances.

## **COUNT II – BREACH OF CONTRACT**

**(Forestry Management Services)**

COMES NOW Plaintiff G & J and for Count II of its Complaint against Defendant Neill, states as follows:

24. Plaintiff G & J refers to and incorporates by reference herein the allegations contained in Paragraphs 1 through 23 above.

25. On January 16, 2012, Defendant Neill sent a proposed Agreement to provide comprehensive forestry consulting and advisement servicing for timber harvest management and reporting (excluding silviculture) regarding the timber purchased by G & J.  Mike Pourney, President and Chief Executive Officer of Plaintiff G & J, signed the Agreement in St.  Louis, Missouri.  As such, the Agreement was accepted by Plaintiff G & J in the State of Missouri.  *See Agreement attached hereto and incorporated by reference as Exhibit 1.*

26. Pursuant to the Agreement, Defendant Neill agreed to do the following:

(a) Establish all boundaries on the timber sale areas.

(b) Establish streamside management zones where required by the Best Management Practices in each state.

(c) Negotiate contracts for each tract and process payments as products are harvested.

(d) Supervise logging to ensure that products are merchandised correctly and that no damage is incurred to the property.  *See Exhibit 1*.

27. Defendant Neill in the performance of the agreed upon services was to exercise a degree of care and skill ordinarily exercised and possessed by a forestry manager engaged in the type of work contemplated by the Agreement on behalf of Plaintiff G & J.

28. Defendant Neill in performance of the duties assumed under the above-referenced Agreement, was to perform those services in accordance with the generally accepted forestry management practices and to use its skill and training to properly carryout those duties.

29. Defendant Neill breached the aforementioned Agreement by failing to exercise the degree of care and skill ordinarily exercised and possessed by a forestry manager engaged in the type of work contemplated by the Agreement, failed to provide services within the generally accepted forestry management practices, and failed to use the skill and training necessary to carry out its duties in that G & J has learned that the actual value of the timber cut on the parcels significantly exceeds the amounts paid to G & J.

30. As a direct and proximate result of the aforementioned breach of the Agreement by Defendant Neill Plaintiff G & J has been damaged.

WHEREFORE, Plaintiff Gross & Janes Co. prays for a judgment in its favor and against Defendant Jeff Neill Timberland Management, Inc. in an amount that is fair and reasonable and to

be proven at trial, but in any event no less than $2,000,000.00, for its costs expended herein, and for such further and other relief as this Court deems just and proper under the circumstances.

## COUNT III – NEGLIGENCE

COMES NOW Plaintiff G & J and for Count III of its Complaint against Defendant Neill, states as follows:

31. Plaintiff G & J refers to and incorporates by reference herein the allegations contained in Paragraphs 1 through 30 above.

32. Defendant Neill in the performance of the services described above had a duty and was required to exercise a degree of care and skill ordinarily exercised and possessed by a forestry appraiser and manager engaged in the type of forestry appraisal and management services described above.

33. Defendant Neill in the performance of the aforementioned services had a duty and was required to exercise that degree of care and skill ordinarily exercised and possessed by a forestry appraiser and manager engaged in the type of work within industry norms.

34. As set out more fully above, Defendant Neill negligently failed to perform forestry appraisal and management services in that the actual value of the timber on the applicable parcels was significantly less than as represented by Defendant Neill at the time of closing of the sale of the property to Plaintiff G & J. Further, the actual value of the timber cut on the property since the sale and while under the management of Defendant Neill significantly exceeds the amounts paid to Plaintiff G & J.

35. As a direct and proximate result of the carelessness and negligence of Defendant Neill as described above, Plaintiff G & J was caused to and did suffer damages in an amount that is currently believed to exceed $2,000,000.00.

WHEREFORE, Plaintiff Gross & Janes Co. prays for a judgment in its favor and against Defendant Jeff Neill Timberland Management, Inc. in an amount that is fair and reasonable and to be proven at trial, but in any event no less than $2,000,000.00, for its costs expended herein, and for such further and other relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff Gross & Janes Co. demands a trial by jury on all issues so triable.

Dated:  July 8, 2015          Respectfully submitted,

**MCCARTHY, LEONARD & KAEMMERER, L.C.**

By:      /s/ Brian E. McGovern
      Brian E. McGovern, Mo. #34677
      bmcgovern@mlklaw.com
      Timothy J. Ahrenhoersterbaeumer, Mo. #55136
      tima@mlklaw.com
      825 Maryville Centre Drive, Suite 300
      Town and Country, Missouri  63017
      Telephone: (314) 392-5200
      Facsimile: (314) 392-5221
      *Attorneys for Plaintiff Gross & Janes Co.*