## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| GROSS & JANES CO., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Case No. 4:15-CV-1058-JAR |
| | ) |
| JEFF NEILL TIMBERLAND | ) |
| MANAGEMENT, INC., | ) |
| | ) |
|     Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant Jeff Neill Timberland Management, Inc.'s Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3). (Doc. No. 8) Defendant argues it is not subject to personal jurisdiction in Missouri under Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1 (id. at 4-5), and lacks sufficient contacts with Missouri to permit this Court to exercise jurisdiction over it (id. at 5-8). Defendant further argues that even if this Court has personal jurisdiction, venue is improper in the Eastern District of Missouri. (Id. at 9-10) Plaintiff Gross & Janes Co. opposes the motion, arguing that Defendant entered into a contract in Missouri (Doc. No. 11 at 4-5), and has sufficient minimum contacts with Missouri such that personal jurisdiction over Defendant is proper in this Court (id. at 5-8). Plaintiff also contends venue is proper in the Eastern District. (Id. at 8) The motion is fully briefed and ready for disposition. For the following reasons, the Court finds it does not have personal jurisdiction over Defendant, and this action will be dismissed.

**I.    Facts**

Plaintiff, a Missouri corporation with its principal place of business in Missouri, is in the business of procuring and processing railroad ties. As part of its business, Plaintiff acquires parcels of land to secure available sources of timber. (Complaint ("Compl."), Doc. No. 1 at ¶¶ 7-8) Defendant, an Arkansas corporation with its principal place of business in Arkansas, provides forestry consulting services.

In November 2011, Plaintiff was investigating the purchase of certain parcels of timber in Arkansas. (Id. at ¶ 9) Defendant was retained by Plaintiff's lender to determine and report the operable stocking, tonnage and value of standing timber for a timber deed for harvest on 4,217.77 acres that Plaintiff intended to purchase. (Id. at ¶ 10) On November 28, 2011, Defendant provided its Forestry Appraisal Report to Plaintiff's lender, which then agreed to finance the acquisition of the property based on the timber tonnage and values provided therein. (Id. at ¶ 14) In reliance on the Appraisal Report, Plaintiff purchased the property on January 12, 2012. (Id. at ¶ 15)

By letter dated January 16, 2012, Defendant proposed to provide Plaintiff with certain forestry consulting/management services in exchange for five percent (5%) of the gross proceeds for related timber sales. (Id. at ¶ 25; Doc. No. 1-1) Plaintiff alleges this letter was a "proposed agreement," which it then signed and accepted in the State of Missouri. (Id.)

In its complaint, Plaintiff alleges that subsequent to the purchase of the property, it learned that many components of the inventory and reports prepared and provided by Defendant were "incorrect and/or non-existent beyond the statistical limits and industry standards." (Compl. at ¶¶ 17-21) In particular, Plaintiff alleges that at the time of the closing, Defendant estimated the value of the standing timber on the property to be 5.8 to 6.4 million dollars when the actual value

was significantly less than represented. (Id. at ¶ 22) Plaintiff further alleges that the actual value of the timber cut on the property significantly exceeds the amounts paid to Plaintiff. (Id. at ¶ 29)

Plaintiff asserts claims for breach of the forestry appraisal services agreement (Count I) and forestry management services agreement (Count II), and for negligence (Count III). Plaintiff states the Court has personal jurisdiction over Defendant because Defendant entered into a contract with Plaintiff that satisfies Missouri's long-arm statute and because the injuries which give rise to this action have a connection to the State of Missouri. (Id. at ¶ 4) Plaintiff states venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. (Id. at ¶ 5) Defendant moves to dismiss the complaint for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3).

## II.     Legal standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations and quotation marks omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. Id. (citing Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).

When considering a motion to dismiss for lack of personal jurisdiction, a federal court engages in a two-step inquiry. First, the district court must determine "whether the defendant committed one of the acts enumerated in [Missouri's] long-arm statute." Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1982). Then, the court must consider whether the exercise of personal jurisdiction over the defendant comports with the requirements of due process. Id. Missouri courts have construed the long arm statute "'to extend the jurisdiction of the courts of this state over nonresident defendants to the extent permissible under the Due Process Clause.'" Moog World Trade Corp. v. Bancomer, 90 F.3d 1382, 1384 (8th Cir. 1996) (quoting State ex rel. Deere & Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)).

A defendant moving to dismiss under Rule 12(b)(3) must demonstrate that the plaintiff's choice of venue is improper, generally by submitting affidavits or other evidence. Mounger Constr., LLC v. Fibervision Cable Servs., LLC, No. 2:11-CV-00081-ERW, 2012 WL 4793764, at *3 (E.D. Mo. Oct. 9, 2012) (citing Fed. R. Civ. P. 12(b)(3); Webb Candy, Inc. v. Walmart Stores, Inc., No. 09-CV-2056-PJS/JJK, 2010 WL 2301461, at *4 (D. Minn. June 7, 2010)). Under 28 U.S.C. § 1391(a)(2), venue in a diversity case such as this is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." To resolve the motion to dismiss then, the Court must analyze whether this District has a substantial connection to the claims in the case. Nordyne, Inc. v. Flick Distrib., LLC, No. 4:09-CV-0055-TCM, 2009 WL 1508778, at *3 (E.D. Mo. May 28, 2009). If venue is improper, the court may either dismiss the action or transfer it the proper district. 28 U.S.C. § 1406(a).

### A. Personal Jurisdiction

#### 1. Long-arm statute

Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, make a contract within the state. See Mo. Rev. Stat. § 506.500.1(2). Under Missouri law, a contract is made where the last act necessary to form a binding contract occurs. State ex rel. Career Aviation Sales, Inc. v. Cohen, 952 S.W.2d 324, 326 (Mo. Ct. App. 1997) (internal citations omitted). Thus, for purposes of long-arm jurisdiction, a contract is made where acceptance occurs. Id.

Here, Defendant mailed Plaintiff a one-page letter in Missouri dated January 16, 2012, setting out certain forestry services it "wil [sic] provide for [Plaintiff] on timber recently purchased in Arkansas and Louisiana" in exchange for five percent (5%) of the gross proceeds of related sales. (Doc. No. 1-1) The phrase "I agree to the terms listed above" appears at the bottom of the page. Directly beneath this line is a signature line delineated "Mike Pourney, Gross & Janes Co." (Id.) Mr. Pourney signed the letter on January 18, 2012, in Missouri. (Id.; Affidavit of Mike Pourney ("Pourney Aff."), Doc. No. 11-1 at ¶¶ 14-15)

Defendant argues the letter memorializes a binding oral contract the parties previously made in Springhill, Louisiana. (Doc. No. 8 at 4-5; Affidavit of Jeff Neill ("Neill Aff."), Doc. No. 8-1 at ¶ 7) While Defendant points to the phrase "[a]s per our recent communications" as evidence of a memorialization, the Court finds the phrase "wil [sic] provide" evidences that mutual assent to the terms of the contract, i.e., a "meeting of the minds," had not yet been reached. In determining whether there is mutual assent to the terms, courts look to the parties' actions and words. Hall v. Fox, 426 S.W.3d 23, 25 (Mo. Ct. App. 2014). "Negotiations or preliminary steps towards a contract do not constitute a contract." Id. (quoting L.B. v. State

Comm. of Psychologists, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995)). It was clearly contemplated that Plaintiff would indicate agreement/acceptance of the terms proposed by Defendant with a signature. Thus, until Plaintiff signed the agreement, no written contract was formed.

Defendant's letter was an offer to provide certain forestry services to Plaintiff, which was accepted in Missouri when Plaintiff's representative, Mr. Pourney, signed it, creating a binding contract. Career Aviation, 952 S.W.2d at 326. The contract was made in Missouri, and, therefore, Defendant is subject to the jurisdiction of this Court under Missouri's long-arm statute. Having found that jurisdiction over Defendant is proper under the long-arm statute, the Court next considers whether the exercise of personal jurisdiction over Defendant comports with due process.

   2. **Due process**

Due process requires a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." See Myers v. Casino Queen, Inc., 689 F.3d 904, 911 (8th Cir. 2012) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state," Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG, 646 F.3d 589, 594 (8th Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985)), "to such a degree that it 'should reasonably anticipate being haled into court there.'" Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). To support a finding of reasonable anticipation, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits

and protections of its laws." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quoting Soo Line R.R. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 529 (8th Cir. 1991)).

The Eighth Circuit has established a five factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties."[1] Dairy Farmers, 702 F.3d at 477 (quoting K–V Pharm., 648 F.3d at 592).

Personal jurisdiction may be established by general or specific jurisdiction, and the third factor − relation of the cause of action to the contacts − distinguishes between the two. Bell Paper, 22 F.3d at 819 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984)). For general jurisdiction to exist, the defendant must have "continuous and systematic" contacts with the forum state, even if the plaintiff's claims do not arise out of those activities. In contrast, specific jurisdiction arises when the injury giving rise to the lawsuit occurred within or had some connection to the forum state. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). See also Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1091 (8th Cir. 2008); Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). Plaintiff does not contend the basis for personal jurisdiction over Defendant is its "continuous and systematic" contacts with the state required for general jurisdiction.[2] (See Doc. No. 11 at 6)

---

[1] Significant weight is afforded to the first three factors; the other factors are secondary and not dispositive. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

[2] A corporation is only subject to general jurisdiction where it is "at home," i.e., where it is incorporated or has its principal place of business. Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014). Here, Defendant is an Arkansas corporation with its principal place of business in Arkansas. (Compl. at ¶ 2)

Thus, the Court considers whether Defendant's contacts are sufficient for specific jurisdiction. Miller, 528 F.3d at 1091.

In support of its motion to dismiss, Defendant submits the affidavit of its owner Jeff Neill, who states that no representative of Defendant has ever traveled to Missouri in connection with Defendant's work with Plaintiff. All negotiations and discussions between the parties took place in person in Louisiana or Arkansas or over the phone. No in-person negotiations or discussions took place in Missouri. (Neill Aff. at ¶¶ 10-11) Defendant did not provide any services to Plaintiff regarding land located in Missouri; rather, the agreement between the parties concerns land located in Arkansas and Louisiana. (Id. at ¶¶ 5, 8-9)

Relying on Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515 (8th Cir. 2010), Plaintiff contends that certain "meaningful events," namely Plaintiff's reliance on the forestry appraisal report and execution of the forestry management agreement, took place in Missouri, so as to subject Defendant to specific jurisdiction. (Doc. No. 11 at 7; Pourney Aff. at ¶¶ 7-8, 10-14). In addition, Defendant's representatives contacted Plaintiff in Missouri by phone and email in November 2011 and January 2012 as part of the process of securing both the appraisal report and the management agreement. (Pourney Aff. at ¶¶ 9, 16) After the management agreement was executed in Missouri, Defendant's representatives continued to direct communications by phone and email to Plaintiff in Missouri as part of the business transactions associated with the Agreement. (Id. at ¶ 17) According to Plaintiff, these communications continued until approximately August 2014. (Id. at ¶ 18) None of these are sufficient minimum contacts with Missouri to establish specific jurisdiction over Defendant.

In Wells Dairy, the defendant's "ongoing business relationship" with plaintiff, an Iowa company, specifically contemplated consequences in Iowa. Defendant sought credit approval

8

from plaintiff and its application was processed and approved in Iowa. Defendant received and transferred plaintiff's product in Iowa, under the "customer pick up" term of delivery that it dictated. Defendant allowed its customers to take possession of the product in Iowa, effectively accepting delivery and redelivering the product to its customers. Defendant also remitted payment to plaintiff in Iowa for its purchases. Defendant entered into more than 100 transactions over the course of two years, during which time it relied on the Iowa company for customer support. 607 F.3d 519-20. In sum, Iowa was central to the parties' bargain.

Here, there is no similar connection to Missouri. See Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 824 (8th Cir. 2014). The subject matter of both the appraisal report and the forestry management agreement involved services related to Plaintiff's purchase and ownership of parcels of timber to be performed in Arkansas and Louisiana. There is no connection between the subject matter of the litigation and Missouri or between Defendant and Missouri; the only link to Missouri is Plaintiff's residency. "[T]he plaintiff cannot be the only link between the defendant and the forum. To find otherwise would improperly attribute a plaintiff's forum connections to the defendant and make those connections decisive in the jurisdictional analysis. The due process minimum contacts analysis must focus on the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Darwin Chambers Co. L.L.C. v. Bennington Coll. Corp., No. 4:14-CV-1925-CAS, 2015 WL 1475009, at *8-9 (E.D. Mo. Mar. 31, 2015) (internal citations and quotation marks omitted). See also Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 313 (8th Cir. 1982) ("It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident … Merely entering into a contract with a forum resident does not

provide the requisite contacts between a (nonresident) defendant and the forum state" for purposes of due process.") (internal citations and quotation marks omitted).

Furthermore, in the Eighth Circuit, mail or telephone correspondence between defendant and the forum state is insufficient to satisfy due process. See, e.g., T.J. Raney & Sons, Inc. v. Security Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir. 1984) ("[T]he use of interstate mail, telephone, or banking facilities, standing alone, was insufficient to satisfy the requirements of due process."); Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, 747 F.2d 448, 456 (8th Cir. 1984) ("[Defendant's] contacts have been limited to phone conversations and written correspondence with [plaintiffs]. These contacts are not sufficient, under the due process clause, to justify an exercise of personal jurisdiction over the defendant."); Scullin Steel, 676 F.2d at 314 ("The use of interstate facilities (telephone, the mail) ... are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process."); Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982) ("Although the parties did make telephone calls, exchange correspondence, and use banks to arrange payment, 'the use of arteries of interstate mail, telephone, railway, and banking facilities is insufficient, standing alone, to satisfy due process.'").

### B. Improper Venue

Defendant also argues that venue is improper in this District. However, because the Court lacks personal jurisdiction over Defendant, the Court will not address whether venue is proper in the Eastern District of Missouri. Metropolitan Cas. Ins. Co. v. Combs, No. 4:13-CV-1813-CAS, 2014 WL 988452, at *5 (E.D. Mo. Mar. 13, 2014); Burns & McDonnell Eng'g Co. v. Anderson, No. 05-0610-CV-W-GAF, 2005 WL 3107698, at *2 n.1 (W.D. Mo. Nov. 18, 2005).

### III. Conclusion

For these reasons, the Court finds and concludes that it lacks personal jurisdiction over Defendant, and will grant its motion to dismiss for lack of personal jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [8] is **GRANTED**.

A separate Judgment of Dismissal will accompany this Memorandum and Order.

Dated this 7th day of September, 2016.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**